# Hipple *versus* Rice.

Where lots in a town were disposed of by lottery, each purchaser of a ticket being entitled to a lot of equal size and value, to be determined by the drawing, and the owner of the land after the drawing of the lottery made a deed to the grantee in which the making of the lottery, the purchase of the ticket by the grantee, and the drawing of the number, were recited, and in which same deed, the grantor reserved a ground-rent of one dollar per year, it was *Held,*

That a subsequent holder of the title of the grantee, could not set up the lottery as a defence to the payment of the ground-rent.

That the transaction having been consummated by a deed, and possession taken under it, the grantee and those claiming under him, are estopped from taking advantage of the recitals to avoid the payment of the ground-rent reserved by the deed.

ERROR to the Common Pleas of *Perry county.*

This was an action of covenant, by James Rice against Henry Hipple, to recover the arrearages of ground-rent reserved in a

[Hipple *v.* Rice.]

deed. On the 30th October, 1795, Abraham Landis was the owner of a tract of land in what is now Perry county. He caused to be made and signed the following:—

"Articles of agreement between Abraham Landis, of, &c., and the *purchasers of tickets* for the drawing of lots to be by him laid out in the manner hereafter mentioned, on his tract of land in Tyrone township, &c.—Witnesseth that said Abraham Landis is to lay out 72 lots, beginning at the great road, &c. [Description of land and manner of laying out lots.] Every purchaser of a ticket or tickets for the drawing of a lot or lots, shall be entitled to receive a ticket or tickets upon their signing this article and paying three pounds for each ticket, which ticket when drawn shall be entitled to the number or lot drawn against its number, for the making of a good and sufficient deed of conveyance (subject to the yearly ground-rent of one dollar, now valued at seven shillings and six pence), I, the said Abraham Landis, do hereby bind myself, and we, the *purchasers of tickets*, do hereby obligate ourselves to build a house two story high on the front of each lot, which building or some other house of such height on some part of such lot as such purchaser may choose, always leaving room for building two story houses on the front of said lots, or higher, if they see cause, and also in all such buildings there must be no other than stone or brick chimneys; and, further, we, the said purchasers, do each of us bind ourselves to make a building of some of the aforementioned description within the space of three years from the drawing of the lots, otherwise to give up and quit all claim to such lot or lots as are not so improven and built upon, and, of the time of drawing said lottery, I, the aforesaid Abraham Landis, do undertake to give public notice by advertisement at least three weeks before the drawing of the lottery. For the true performance," &c. Dated 1795. Recorded 3d November, 1806.

John Bigler became the purchaser of a ticket, and drew lot No. 13, in the town of Landisburg, for which Landis executed and delivered to him a deed, in which, after reciting his title and the making and drawing of the lottery, and that Bigler drew lot No. 13, "he for, and in consideration of, the sum of £3 lawful money to him in hand, paid by the said John Bigler, at and before the ensealing and delivery of these presents, for one ticket in the above-mentioned lottery." He conveys to him in fee simple, with following reservation: "And it is further covenanted and agreed by the said John Bigler, for himself, his heirs, executors, administrators, or assigns, to and with the said Landis, his heirs, executors, administrators, or assigns, that he or they will pay, or the said lot is subject to the payment of, the yearly ground-rent of one dollar, valued at seven shillings and six pence, and the purchaser is likewise obliged to build a house two stories high on the front of each lot, which building, or some other house of such

[Hipple *v.* Rice.]

height on some part of such lot as such purchaser shall choose, always leaving room for two story houses on the front of each lot, or higher if they see cause ; and, in all such buildings, there must be no other than stone or brick chimneys, and such within three years after the time of drawing said lots, otherwise to give up and quit all claim to such lot or lots as are not improven or built upon in the said time."

Abraham Landis's claim to the quit-rents, by a regular chain of conveyances, is vested in the plaintiff, James Rice, who claims to recover the ground-rent for sixteen years.  And Henry Hipple, by a regular chain of conveyances, holds the title of John Bigler to lot No. 13.

The foregoing facts were agreed upon in the nature of a case, for the opinion of the court, whether the plaintiff has any legal claim to quit-rents, or such a claim as the law will enforce.

The court below (GRAHAM, P. J.) gave the following opinion, and entered judgment for the plaintiff on the case stated :—

" There is no conflict of testimony in this case, and the counsel have submitted it to the court upon the foregoing evidence, to be considered a case stated for the opinion of the court, upon which judgment shall be entered, the question presented being one of law for the court to decide, and not a fact for a jury, and either party to take a writ of error without oath or bail.   The town of Landisburg was laid out by Abraham Landis, the proprietor, in 1793.  The lots were assigned to ticket holders by lottery.  There were no blanks, but each holder of a ticket received the lot drawn against the number of his ticket.  The holders paid £3 for a ticket, and in addition to the price paid for a ticket, each lot was to be subject to a yearly ground-rent of one dollar, and to be conveyed by the proprietor subject to said rent.  Lot No. 13 was drawn by John Bigler and conveyed to him by Abraham Landis, by deed dated 9th November, 1807, for the consideration of £3.  In the deed there is the following clause :—' And it is further covenanted and agreed by the said John ·Bigler for himself, his heirs, executors, administrators, or assigns, to and with the said Abraham Landis, his heirs, executors, administrators, or assigns, that he or they will pay, or the said lot is subject to the payment of the yearly ground-rent of one dollar, valued at seven shillings and six pence.'   It is admitted that the defendant is in possession of this lot No. 13, by regular chain of title from John Bigler the alienee of Abraham Landis, and that the quit-rents are claimed and unpaid from 1841.   The evidence shows that the plaintiff, by regular chain of title from Abraham Landis, is the owner of the quit-rents.

" The defendant's counsel contend that the lot being disposed of by lottery, as recited in the deed and quit-rents reserved, there

[Hipple v. Rice.]

can be no recovery—that the consideration grows out of an illegal transaction.

"If this suit was to recover the price of the ticket (£3), there could be no recovery, for the mode in which the lots were assigned to ticket holders would bring the case within the provisions of the Act of 17th February, 1762, and the case of Seidenbender v. Charles, 4 S. & R. 151. That case was an action upon a note given for the price of a ticket.

"The present case is different. The lottery only decided the choice of lots, which we presume were of unequal value. The price of each ticket was £3, and every lot was subject to a ground-rent of one dollar per year. This reservation was retained in the real estate by Landis, the proprietor of the town, and although he may have disposed of a part of his interest in the realty in an illegal manner, which would have prevented him from recovering the price to be paid for the interest conveyed, this could not affect the validity of his title to the estate or interest retained which he never agreed or intended to convey.

"Suppose Landis, in place of reserving, by the terms of his lottery and subsequent deeds, a ground-rent of one dollar upon each lot, had only stipulated to convey, and actually conveyed the one undivided half of each lot, could the purchasers, after obtaining their deeds for an undivided half, not only have refused to pay the purchase-money, but taken the whole because the mode adopted to dispose of the half was illegal? But this attempt now to claim an interest which they never purchased, is virtually the same. That a ground-rent is real estate is decided in Cobb v. Biddle, 2 Harris 445, Juvenal v. Patterson, 10 Barr 283, and the other authorities there cited. The defendant too is without merit. The lot has doubtless passed through many intermediate hands from 1807 down to the present claimant with this reservation upon the face of the title. The rents it appears were paid till 1841, and there would be no equity in giving him what he never purchased, and what those from whom he derives his title never claimed.

"Judgment is entered for the plaintiff for $16 up to 1st of April, 1856."

The error assigned was that the court below erred in entering judgment for the plaintiff on the case stated.

Watts and Miller, for plaintiff in error, contended that the whole contract was void, and cited the Act of 17th February, 1762, declaring all lotteries "public nuisances." They cited and relied upon the case of Seidenbender v. Charles, 4 S. & R. 151. It is asking the court to aid in carrying out the illegal and prohibited contract.

[Hipple *v.* Rice.]

*Junkin,* for defendant in error.—Ground-rents are real estate: Cobb *v.* Biddle, 2 *Harris* 444. The ground-rent reserved is only a part of the real estate remaining in the grantor: Stewart *v.* Wolveridge, 2 *M. & S.* 83; Walker *v.* Physick, 5 *Barr* 204. The ground-rent was never sold—it is therefore unaffected by the lottery. The parties themselves executed the contract, and the court will not unravel it: Lestapies *v.* Ingraham, 5 *Barr* 81; Fox *v.* Cash, 1 *Jones* 211; Ex parte Bulmer, 13 *Ves.* 316. He may recover if the action be not expressly on the contract: 4 *Burr.* 2069, Faikney *v.* Renous; Petrie *v.* Hannay, 3 *T. R.* 419.

The opinion of the court was delivered by

ARMSTRONG, J.—Abraham Landis being the owner of 116 acres of land in Perry county, he signed and made public the following document:—

" Articles of agreement between Abraham Landis and the *purchasers of tickets* for the drawing of lots to be by him laid out in the manner hereinafter mentioned, on his tract of land in Tyrone township, &c. Said Abraham Landis is to lay out 72 lots, beginning at the great road, &c. * * Every purchaser of a ticket or tickets for the drawing of a lot or lots, shall be entitled to receive a ticket or tickets upon their signing this article and paying three pounds for each ticket, which ticket, when drawn, shall be entitled to the number or lot drawn against its number, for the making of a good and sufficient deed of conveyance (*subject to the yearly ground-rent of one dollar,* now valued at seven shillings and six pence). I, the said Abraham Landis, do hereby bind myself, and we the *purchasers of tickets* do hereby obligate ourselves to build a house two story high on the front of each lot, which building, or some other house of such height, on some part of such lot as such purchaser may choose, always leaving room for building two story houses on the front of said lots, or higher if they see cause; and also in all such buildings there must be no other than stone or brick chimneys; and further, we, the said purchasers, do each of us bind ourselves to make a building of some of the aforementioned description within the space of three years from the drawing of the lots, otherwise to give up and quit all claim to such lot or lots as are not so improven and built upon; and of the time of drawing said lottery, I, the aforesaid Abraham Landis, do undertake to give public notice by advertisement, at least three weeks before the drawing of the lottery." Recorded 3d Nov. 1806.

At the drawing of the lottery, John Bigler drew lot No. 13 in the town of Landisburg, for which Abraham Landis executed and delivered to him a deed on the 9th of November, 1807. The deed is in accordance with the article of agreement. It recites the title—describes the lot—acknowledges the receipt of the consideration-money, " three pounds," for one ticket in the above-

mentioned lottery, and contains this additional clause: "It is further covenanted and agreed by the said John Bigler, for himself, his heirs, executors, administrators, or assigns, to and with the said Landis, his heirs, executors, administrators, or assigns, *that he or they will pay, or the said lot is subject to the payment of the yearly ground-rent of one dollar,*" &c.

James Rice, the plaintiff below, now holds a regular chain of conveyances from Landis for this claim to quit-rents. And Hipple, by a regular chain of conveyances, holds the title of John Bigler to lot No. 13.

The Act of 17th of February, 1762, declares that "all lotteries whatsoever, whether public or private, are common nuisances, and against the common good and welfare of this province." The claim for quit-rents in the present case is resisted on the ground that the agreement under which Bigler purchased his ticket, and at the drawing of the lottery became entitled to lot No. 13, and deed received by him in pursuance of it, all constituted but a lottery scheme, which came within the purview of the statute, and is prohibited by law. Whether this defence is sound as applied to the facts of this case, is the subject of inquiry. The evils at which the Act of 1762 aimed, and properly, a deadly blow, were such as partook of a gambling character, then prevailing to an alarming extent, and most corrupting in their influences; when the chances were unequal, the schemes deceptive, and the innocent and unwary induced to embark; when they were doing little more than "sowing to the wind and reaping the whirlwind." But it would, I think, be going too far to say that this act would have a proper application if applied to prevent several equal owners of land from determining by lot their respective shares.

Abraham Landis laid out his tract of land into 72 town lots, and each person signing the agreement, and paying three pounds (and complying with other conditions in the agreement), was entitled to receive a ticket, which, when drawn, would be entitled to the lot drawn against its number, "subject to the yearly ground-rent of one dollar." For aught that appears in this case, all the lots were of equal value, equally divided; the tickets paid for, and each holder of a ticket entitled to an equal share; the object of the lots cast being to assign to each one his particular part. In Seidenbender v. Charles, 4 *S. & R.* 161, it was said that the purchasers of tickets in a lottery for lots laid out in a town were not *tenants* in *common.* But the reason given was, that after the lottery was drawn, "they took *very unequal parts*, designated by the chance of the wheel." Yet Judge TILGHMAN there observes, "when tenants in common make partition, they are seised of the whole estate before partition, and the object of the lot is, to assign to each his particular portion, the whole having been previously divided into parts as nearly as possible of *equal value.*"

[Hipple *v*. Rice.]

In the present case, the tickets were paid for, the rights equal—nothing to show that the value of the ground was not equal to the price of the ticket—and the only office of the lottery was to assign to each his particular lot. The point decided in Seidenbender *v.* Charles was, that no action could be sustained for the *price of a ticket* in a lottery for the disposal of land. Had Bigler, after signing the agreement, refused to pay the price of the ticket, his defence under the Act of 1762 would undoubtedly have been good. But he chose to pay it, to take the deed, enter into possession, and carry the contract into effect; and now, with full notice of all this, his transferee, the present defendant, desires to go behind the deed to reach after an alleged illegal transaction, to enable him to enjoy his present possession without the payment of the stipulation contained in the only title he has to his ground. In the case last referred to, Judge TILGHMAN remarks, "I am not giving an opinion on cases where the parties have thought proper to carry the contract into effect. The present question is, whether the purchaser of a ticket can be compelled to pay for it."

Suppose the original agreement for the sale of tickets illegal, and that the law would arrest the payment of every ticket sold under it, still, if the transaction has been consummated by a deed, can the present defendant, for his purposes, go behind it? Although it recites the agreement, I hold that it having been accepted, and possession taken under it, he is estopped from taking advantage of the recitals to enable him to evade the payment of the quit-rents mentioned in it. In Lestapies *v.* Ingraham, 5 *Barr* 81–82, it is said, "that, while a court will not enforce an illegal contract, yet if the parties themselves execute it, and the illegal object has been accomplished, the money or thing which was the price of it, may be a legal consideration between the parties for a promise express or implied, and the court will not unravel the transaction to discover its origin."

Admitting, if necessary, that the original agreement for the sale of the lots by lottery was illegal, yet the deed following it does not purport to convey the ground-rent, but expressly reserves it. "The said John Bigler, for himself, his heirs, executors, administrators, or assigns, covenants to and with the said Landis, his heirs, executors, administrators, or assigns, that he or they will pay, or the said lot is subject to the payment of the yearly ground-rent of one dollar." It is settled that a ground-rent is real estate. In case of intestacy it goes to the heir; it may pass by devise; and it may be conveyed by deed: Cobb *v.* Biddle, 2 *Harris* 445, and 10 *Barr* 282; 1 *Barr* 399; 8 *W. & S.* 185. The plaintiff stands in the place of Landis, and has all the rights of the latter, the quit-rents due. The defendant is clothed with the title of Bigler and no more. He was bound to know that a ground-rent was real estate. He knew that the deed to which he traced his

[Hipple v. Rice.]

own title expressly reserved the quit-rents, and that this interest in the realty had never been conveyed. He cannot therefore fairly enjoy the possession of the lot without paying the plaintiff's claim.

Judgment affirmed.